UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY LAMONT MOORE #255379,

       Plaintiff,

v.                                                    Case No. 2:16-cv-55
                                                          HON. ROBERT HOLMES BELL
THOMAS HAMEL, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Anthony Lamont Moore pursuant to 42 U.S.C. § 1983.  Plaintiff filed this complaint against Prison Counselor Thomas Hamel, Resident Unit Manager Thomas Perttu, Warden Kathleen Olson, and Assistant Resident Unit Supervisor Deborah Loop.  Defendants have now filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies.  (ECF No. 12.) Plaintiff has responded.  (ECF No. 15.)  This matter is now ready for decision.

Plaintiff alleges that on October 27, 2015, Defendant Hamel read his legal mail before approving it for expedited legal mail service.  PageID.8.  While reading the mail, Defendant Hamel removed a declaration and a memorandum of law in support of the declaration.  PageID.8-9.  A few days later, Plaintiff learned that the district court did not receive all of his documents; thus, Plaintiff went to talk to Defendant Hamel.  PageID.9.  During this discussion, Defendant Hamel told Plaintiff that "it is not that important" and "you do not have any rights and prisoners have no rights to sue staff." PageID.10.

Plaintiff proceeded to file a grievance against Defendant Hamel. PageID.9. During the grievance process, Plaintiff alleges that Defendant Perttu altered Plaintiff's statement and did not rely on the evidence when he denied the grievance. PageID.9. In addition, Plaintiff alleges that Defendant Perttu told him that "he should not have written a grievance on Defendant Hamel" and that because Plaintiff was "causing trouble," Defendant Perttu was going to deny the grievance regardless of the evidence. PageID.9.

Shortly thereafter, Plaintiff informed Defendant Olson that Defendants Hamel and Perttu were retaliating against Plaintiff for filing grievances and lawsuits. PageID.11. Defendant Olson told Plaintiff that he needed to "man up" and stop writing grievances on staff. PageID.11. Plaintiff further alleges that Defendant Perttu continued to retaliate against Plaintiff for filing grievances. PageID.12. Specifically, Plaintiff contends that Defendant Perttu began ordering fellow prison officials to conduct shakedowns of Plaintiff's cell. PageID.12. During these shakedowns, Plaintiff's legal property was thrown all over the cell floor. PageID.12.

On November 25, 2015, Plaintiff approached Defendant Perttu because he wanted to send legal mail to the court. PageID.12. The mail contained a temporary restraining order to stop the staff from "constantly violating his constitutional rights." PageID.12. After reading Plaintiff's legal mail, Defendant Perttu threw the mail on the floor and told Plaintiff that he was not going to mail it. PageID.13.

On November 30, 2015, Plaintiff again attempted to mail out the temporary restraining order. PageID.13. This time, Plaintiff approached Defendant Loop. PageID.13. However, Defendant Loop refused to send the mail. PageID.13. Defendant Loop allegedly stated that "she was not going to mail out anything to the courts that has her name or anyone that she works with in it." PageID.13.

In his complaint, Plaintiff's asserts the following claims: (1) a retaliation claim against Defendant Perttu for his acts in response to Plaintiff filing a grievance, (2) a retaliation claim against Defendants Perttu and Hamel for their acts in response to Plaintiff accessing the courts; (3) a denial of access to the courts claim against Defendants Perttu, Hamel, and Loop; (4) an Eighth Amendment claim against Defendant Perttu for ordering correctional officials to perform shakedowns of Plaintiff's cell; (5) a supervisor liability claim against Defendant Olson for failing to investigate and rectify prison guards retaliatory acts; and (6) a "gross negligence" claim against all Defendants for failing to comply with MDOC policy and failing to protect Plaintiff's constitutional rights.

Defendants have moved for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed three grievances related to this case. On November 2, 2015, Plaintiff filed Grievance OCF-15-11-0712-15c. PageID.141-144. At Step I, Plaintiff complained that Defendant Hamel interfered with his access to the courts by removing a declaration and a memorandum of law in support of the declaration from Plaintiff's legal mail. At Step II, Plaintiff made the same complaint regarding Defendant Hamel, but also added that Defendant Perttu intentionally changed Plaintiff's statement during Step I. At Step III, Plaintiff made the same argument made in his Step I and Step II grievances.

Plaintiff also filed a second grievance on the same day—November 2, 2015. In Grievance OCF-15-11-0713-28a, Plaintiff complained that Defendant Hamel retaliated against Plaintiff when he removed the documents from Plaintiff's legal mail. PageID.150-153. Shortly after he filed Grievance OCF-15-11-0712-15c, Plaintiff approached Defendant Hamel to ask why the court did not receive all of the documents in his legal mail. Defendant Hamel responded by saying that Plaintiff did not have any rights, and that prisoners do not have the rights to sue staff.

Based on these new facts, Plaintiff filed this grievance alleging that Defendant Hamel retaliated against him. However, this grievance was rejected because it was determined that it was a "duplicate" grievance.

Plaintiff filed a third grievance on November 18, 2015. PageID.145-149. In Grievance OCF-15-11-0770-11e, Plaintiff complained at Step I that Defendant Perttu intentionally changed Plaintiff's statement when he denied Plaintiff's previous grievance against Defendant Hamel. At Step II, Plaintiff made the same complaint, but Plaintiff also added that Defendant Perttu began retaliating against Plaintiff by ordering cell shakedowns. At Step III, Plaintiff made the same complaints as he did in Step I and Step II, but Plaintiff also added that he spoke with Defendant Olsen about the alleged retaliatory acts.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534

U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why,

how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).[1] The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

In this case, Defendants argue that Plaintiff failed to exhaust his administrative remedies on all allegations in his complaint except for two issues. In Grievance OCF-15-11-0712-

---

[1] In *Holoway v. McClaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. The Sixth Circuit failed to provide any guidance as to how the MDOC might determine who the plaintiff intended to name in a future federal lawsuit at the time the plaintiff filed his Step I grievance.

15c, Plaintiff complained that Defendant Hamel interfered with his access to the courts by removing a declaration and memorandum of law in support of the declaration from Plaintiff's legal mail. Plaintiff appealed this issue through Step III. In Grievance OCF-15-11-0770-11e, Plaintiff complained that Defendant Perttu intentionally changed Plaintiff's statement when he denied Plaintiff's previous grievance against Defendant Hamel. Plaintiff appealed this issue through Step III. Thus, Plaintiff properly exhausted both of these issues.

Plaintiff argues that he exhausted all *available* administrative remedies. Plaintiff makes three arguments to support his proposition that the other administrative remedies were unavailable. First, Plaintiff alleges that the grievance coordinator instructed Plaintiff to add his retaliation claim against Defendant Perttu to Step II of Grievance OCF-15-11-0770-11e. Plaintiff alleges that the grievance coordinator told him that if he filed a separate grievance, the grievance would be rejected as duplicative. Second, Plaintiff argues that he filed three additional grievances against Defendant Perttu, Loop, and Olson. Plaintiff has submitted "golden rod" copies of these grievances.[1] PageID.214-219. Plaintiff alleges that "for reasons unknown," the grievance coordinator never processed these grievances. Third, Plaintiff argues that he attempted to exhaust the retaliation claim against Defendant Hamel in grievance OCF-15-11-0713-28a. Even though this grievance contained several new allegations regarding Defendant Hamel's reason for rejecting Plaintiff's legal mail, the grievance was rejected as duplicative. Plaintiff contends that filing a second grievance was his only option to allege these new facts of retaliation because there is no way to amend his previous grievance. Thus, Plaintiff is essentially arguing that the administrative remedies were unavailable to him because the grievance coordinator made misrepresentations to him regarding the proper grievance procedure, the grievance coordinator refused to process three

---

[1] It should be noted that these copies are very difficult to read.

grievances, and the grievance process does not provide a remedy to a claim that is based on similar facts in a previous grievance but also alleges new facts discovered after the grievance was submitted. *See Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

Defendants presented no evidence regarding the availability of the MDOC's grievance process and they did not file a reply brief addressing Plaintiff's arguments that the grievance process was unavailable. Therefore, in the opinion of the undersigned, there is a genuine issue of fact as to whether Plaintiff exhausted all available administrative remedies.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 12.) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:     September 27, 2016              */s/ Timothy P. Greeley*
                                           TIMOTHY P. GREELEY
                                           UNITED STATES MAGISTRATE JUDGE