UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY LAMONT MOORE #255379,

    Plaintiff,

v.                                           Case No. 2:16-cv-55
                                           HON. JANET T. NEFF

THOMAS HAMEL, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Anthony Lamont Moore pursuant to 42 U.S.C. § 1983. Plaintiff asserts various constitutional claims and gross negligence state-law claims against Prison Counselor Thomas Hamel; Resident Unit Manager (RUM) Thomas Perttu; Assistant Resident Unit Supervisor (ARUS) Deborah Loop; and Warden Kathleen Olson. Defendants have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (ECF No. 31.) Plaintiff has responded. (ECF No. 50.) This matter is ready for decision.

Plaintiff is incarcerated at Ojibway Correctional Facility (OCF). On October 27, 2015, Plaintiff attempted to mail some legal documents to this Court through the prison's expedited mail service. According to Plaintiff, the legal documents—which included an amended complaint, a declaration, a memorandum of law in support of the declaration, and five exhibits—were to be filed in *Moore v. Larson et al.*, Case No. 2:15-cv-140 (W.D. Mich.). In order to mail the documents, Plaintiff filled out the necessary authorization form and brought it to Defendant Hamel's office. When Plaintiff arrived at his office, Defendant Hamel asked Plaintiff to remove the documents from the envelope so that he could determine whether they qualified for the

expedited mail service. After briefly examining the documents, Defendant Hamel determined that they qualified for expedited mail. Both parties signed the authorization form, which stated that Plaintiff sent "1 amended complaint, 1 declaration, 5 exhibits [to be filed in] me v. Larson, et at., 2:15-cv-140." (PageID.334.)

Plaintiff alleges that after leaving Defendant Hamel's office, he noticed that Defendant Hamel was still reading his legal mail in violation of prison policy. Plaintiff further claims that he saw Defendant Hamel remove some of the documents from the envelope before sealing it. Shortly thereafter, Plaintiff discovered that the Court did not receive the declaration and the memorandum of law in support of the declaration; therefore, Plaintiff went to speak with Defendant Hamel. During this discussion, Defendant Hamel allegedly told Plaintiff that "it is not that important" and "you do not have any rights and prisoners have no rights to sue staff." (PageID.464.)

On November 2, 2015, Plaintiff filed a grievance against Defendant Hamel in which he alleged that Defendant Hamel removed the declaration and memorandum of law from Plaintiff's legal mail. Defendant Perttu was the respondent at Step I and interviewed Plaintiff on his complaint. Plaintiff alleges that during the interview, Defendant Perttu told him that "he should not have written a grievance on Defendant Hamel", and that the grievance was going to be denied regardless of the evidence because Plaintiff was "causing trouble." (PageID.9.) According to Defendant Perttu's response at Step I, Plaintiff told him that he "had to resend everything" and that he mailed the exact same documents a second time. (PageID.455-456.) Because the postage on the first set of documents was $1.64 and the postage for the second set of documents was $1.42, Defendant Perttu determined that Plaintiff must have been lying. Plaintiff claims that he never

said that he had to resend everything and Defendant Perttu intentionally changed Plaintiff's statement during the grievance process.

Plaintiff subsequently filed a grievance against Defendant Perttu. Plaintiff alleges that in response to this grievance, Defendant Perttu began ordering other correction officers, including Nathan Niemi, Anthony Blodgett, and Joseph Cayer, to conduct "shakedowns" of Plaintiff's cell. During the shakedowns, Plaintiff's property was thrown all over his cell.

On November 25, 2015, Plaintiff attempted to send more legal mail to this Court. Plaintiff alleges that these documents included "an order to show cause and temporary restraining order, a declaration in support of my motion for a temporary restraining order and preliminary injunction, and a memorandum of law." (PageID.458.) The documents were not related to any of Plaintiff's pending cases, but Plaintiff was filing the documents to stop the prison officials at OCF from violating his constitutional rights. In order to send these documents, Plaintiff approached Defendant Perttu. After reading the documents, Defendant Perttu refused to send them because several prison officials, including himself, were named in the legal documents. Defendant Perttu then threw the documents on the floor. On November 30, 2015, Plaintiff again attempted to mail out the same legal mail, but this time Plaintiff approached Defendant Loop. Defendant Loop refused to send the mail and stated that she was not going to mail out anything to the courts that has her name or anyone that she works with on it.

Due to his ongoing problems with Defendants Hamel and Perttu, Plaintiff attempted to resolve the issues with the warden of OCF—Defendant Olsen. On November 9, 2015, Plaintiff informed Defendant Olson of the "unconstitutional behavior" by Defendants Hamel and Perttu. In response, Defendant Olson stated that Plaintiff needed to "man up" and "that whatever is happening to Plaintiff, as a result of Plaintiff attempting to file lawsuits against the MDOC staff

and writing grievances on MDOC staff, is on Plaintiff." (PageID.466.) On November 21, 2015, Plaintiff again complained to Defendant Olsen in the law library. However, Defendant Olsen responded by saying, "that is what you get when you write grievances on staff." (PageID.466.)

Based on these allegations, Plaintiff's asserts the following claims in this case: (1) a retaliation claim against Defendant Hamel for removing legal documents from his mail; (2) a retaliation claim and an interference with access to courts claim against Defendants Perttu and Loop for refusing to send out his legal mail; (3) a retaliation claim and an Eighth Amendment claim against Defendant Perttu for lying during the grievance process and ordering cell shakedowns; (4) a supervisor liability claim against Defendant Olson; and (5) gross negligence state-law claims against all Defendants.[1]

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th

---

[1] The undersigned initially construed Plaintiff's complaint as also asserting an interference with access to courts claim against Defendant Hamel. (PageID.245.) Defendant Hamel moved for summary judgment on this claim. (PageID.280-282.) However, in his response brief, Plaintiff clarified that he did not bring an interference with access to courts claim against Defendant Hamel. (PageID.480-481.)

-4-

Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

In addition, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones*, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants also contend that they are entitled to qualified immunity on Plaintiff's claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. *Id.* The court may consider either approach without regard to sequence. *Id*. at 236.

Plaintiff asserts retaliation claims against Defendants Hamel, Perttu, and Loop. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff first alleges that Defendant Hamel retaliated against him for exercising his right to access the courts. Plaintiff satisfies the first element because he was engaged in protected conduct—the filing of a civil lawsuit. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 391. To establish the adverse action element, Plaintiff alleges that Defendant Hamel removed a declaration and a memorandum of law from his legal mail on October

27, 2015. According to Plaintiff, he was attempting to file "an amended complaint, a declaration, a memorandum of law in support of the declaration, and five exhibits" in *Moore v. Larson et al.*, Case No. 2:15-cv-140 (W.D. Mich.). However, Plaintiff personally filled out the necessary authorization form, which stated that Plaintiff sent "1 amended complaint, 1 declaration, 5 exhibits [to be filed in] me v. Larson, et at., 2:15-cv-140." Defendant Hamel and Plaintiff both signed this authorization form. The court docket for *Moore v. Larson et al.*, Case No. 2:15-cv-140 shows that the Court received the amended complaint, all five exhibits, and an exhibit verification that "declares under the penalty of perjury" the intended purpose of the exhibits. Thus, the Court received the documents listed on the authorization form that was signed by Plaintiff. Although Plaintiff claims that the declaration listed on the authorization form is proof that he sent a declaration and a memorandum of law in support of the declaration, the undersigned finds that the declaration listed on the authorization form referred to the exhibit verification.

In addition, Plaintiff attempts to establish the casual connection between the adverse action and his protected conduct based on a conversation with Defendant Hamel that occurred on November 2, 2015. Plaintiff alleges that during this conversation, Defendant Hamel told him that his legal mail was "not that important" and "you do not have any rights and prisoners have no rights to sue staff." Plaintiff filed a grievance detailing this conversation on November 2, 2015. (PageID.191.) The grievance also listed the date of the incident as November 2, 2015. (PageID.191.) In a letter to Jaime Nelson and Eric Mattson of the Legislative Corrections Ombudsman Office dated December 4, 2015, Plaintiff stated that this conversation occurred on November 2, 2015. (PageID.512.) In his verified complaint, Plaintiff asserted that this conversation occurred on November 2, 2015. (PageID.10-11.) In his declaration in response to Defendants' motion for summary judgment on the grounds of exhaustion, Plaintiff asserted that

this conversation occurred on November 2, 2015. (PageID.174.) The undersigned relied on this assertion in the Report & Recommendation on the exhaustion issue. (PageID.245-246.)

Defendant Hamel denies that this conversation occurred and states in his affidavit that he was not working on November 2, 2015. Moreover, Defendant Hamel attached his work timesheet to show that he did not work on that day. Despite declaring under penalty of perjury several times that this conversation occurred on November 2, 2015, Plaintiff now alleges that the conversation with Defendant Hamel actually occurred on November 3, 2015. He alleges that he wrote down the wrong date on his initial grievance and the grievance coordinator would not let him change it. However, Plaintiff did not mention any of this when Defendants moved for summary judgment for failure to exhaust administrative remedies. Plaintiff also alleges that he mistakenly wrote down the wrong date on the complaint and that he is suffering from a head injury. Although the undersigned must view the facts in the light most favorable to the Plaintiff, the undersigned will not adopt a set of facts that is blatantly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). No reasonable jury could find that this conversation occurred, thus, Plaintiff has failed to establish a causal connection between the adverse action and protected conduct. Therefore, in the opinion of the undersigned, Plaintiff's retaliation claim against Defendant Hamel should be dismissed.

Next, Plaintiff asserts a retaliation claim and an interference with access to courts claim against Defendants Perttu and Loop for their refusal to send out his legal mail on November 25, 2015, and November 30, 2015. Defendants Perttu and Loop deny refusing to send out any of Plaintiff's legal mail.

The undersigned will first address the interference with access to courts claim. It is well-established that prisoners have a constitutional right of access to the courts. *Bounds v.*

*Smith*, 430 U.S. 817, 821 (1977).  The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts.  *See Knop v. Johnson,* 977 F.2d 996, 1009 (6th Cir. 1992).  In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual prejudice or "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."  *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).  In addition, the Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  Thus, "[a] prisoner's right of access to the courts is limited to direct criminal appeals, habeas corpus applications, and civil rights claims challenging the conditions of confinement."  *Wilson v. Klein,* 75 F. App'x. 479, 480 (6th Cir. 2003) (citing *Lewis*, 518 U.S. at 355; *Thaddeus–X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999)). Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Here, Plaintiff has not identified any actual injury to any of his underlying legal claims.  Plaintiff was attempting to file a motion for a temporary restraining order and preliminary

injunction. Although Plaintiff contends that he was seeking injunctive relief against various prison officials for continuously violating his constitutional rights, Plaintiff admitted at his deposition that he was not filing these documents in a pending case nor attempting to open a new case.[2] (PageID.300-301.)

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Thus, the "party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). In this case, Plaintiff did not file nor sought to file a complaint. "Absent a properly-filed complaint, a court lacks power to issue preliminary injunctive relief." *Powell v. Rios*, 241 F. App'x. 500, 505 n.4 (10th Cir. 2007); *see also Gardner v. McQueen,* 2017 WL 131553, at *2 (E.D. Mich. Jan. 13, 2017) (determining that the plaintiff's motion for a temporary restraining order and preliminary injunction was frivolous in part because no complaint was filed); *Albright v. ISIS*, 2015 WL 12699371, at *1 (E.D. Mich. Mar. 25, 2015) (holding that the court lacked subject-matter jurisdiction over the plaintiff's motion for a preliminary injunction because no complaint was filed). The Court could not have granted Plaintiff the requested injunctive relief without a properly-filed complaint. Furthermore, Plaintiff has not alleged that Defendants' conduct prevented him from filing any of his claims.[3] Because Plaintiff did not suffer

---

[2] Court records show that Plaintiff had four cases pending in this Court as of November 25, 2015. *See Moore v. Larson et al.*, Case No. 2:15-cv-140; *Moore v. Trierweiler et al.*, Case No. 2:15-cv-141; *Moore v. Fegan et al.*, Case No. 2:15-cv-142; *Moore v. Prunick et al.*, Case No. 2:15-cv-143.
[3] In addition to this case, Plaintiff initiated four more cases between December 16, 2015, and June 22, 2016. *See Moore v. Kafczynski*, Case No. 2:15-cv-196 (filed on December 16, 2015); *Moore v. Olson et al.*, Case No. 2:16-cv-10 (filed on January 27, 2016); *Moore v. Unknown Party et al.*, 2:16-cv-91 (filed on April 8, 2016); *Moore v. Johnson et al.*, Case No. 2:16-cv-15 (filed on June 22, 2016).

any actual injury and was not attempting to file a civil rights action, the undersigned recommends that Plaintiff's access to court claim against Defendants Perttu and Loop be dismissed. [4]

Similarly, Plaintiff's retaliation claims against Defendants Perttu and Loop based on the same allegations must fail because Plaintiff was not engaged in protected conduct. As stated above, Plaintiff was not attempting to file any documents in a pending civil rights action or attempting to open a new case. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). In the opinion of the undersigned, Plaintiff was not engaged in protected conduct when he sought injunctive relief in which the Court lacked the authority to grant. *See Herron v. Harrison*, 203 F.3d 410 (6th Cir. 2000) (holding that a prisoner cannot assert a retaliation claim against prison officials based on their conduct in response to a civil action that was dismissed as frivolous). Therefore, the undersigned recommends that Plaintiff's retaliation claim against Defendants Perttu and Loop based on their refusal to send out legal mail be dismissed.

Plaintiff also asserts a retaliation claim against Defendant Perttu for his conduct in response to Plaintiff filing grievances. Specially, Plaintiff alleges that Defendant Perttu (1) refused to consider Plaintiff's evidence and intentionally changed Plaintiff's statement during the grievance process; and (2) ordered correction officers Nathan Niemi, Anthony Blodgett, and Joseph Cayer to shakedown Plaintiff's cell. Furthermore, Plaintiff asserts an Eighth Amendment claim based solely on the retaliatory cell shakedowns.

Defendant Perttu argues that because a prisoner does not have a right to an effective grievance procedure, Plaintiff's claims regarding the grievance procedure fail to state a claim of

---

[4] The undersigned also notes that, on February 10, 2016, Plaintiff filed a motion for a temporary restraining order and preliminary injunction in an existing case, *Moore v. Olson et al.*, 2:16-cv-10. The Court denied Plaintiff's motion. That motion appears to assert similar arguments as the purported motion that Defendants Perttu and Loop refused to send.

-11-

constitutional dimension.  Defendant Perttu also argues that he never ordered any prison officials, including Nathan Niemi, Anthony Blodgett, and Joseph Cayer, to shakedown Plaintiff's cell. Moreover, Niemi, Blodgett, and Cayer submitted affidavits stating that Defendant Perttu never ordered them to shakedown Plaintiff's cell.

However, Plaintiff states that Niemi, Blodgett, and Cayer told him that they were following Defendant Perttu's orders.  Plaintiff also submitted an affidavit from his cellmate, Robert Sarber, who states that he witnessed the shakedowns.  Sarber states that the prison officials said that they were following Defendant Perttu's orders during the cell shakedowns.

It is true that prisoners do not have a due process right to an effective grievance procedure.  However, Defendant Perttu's argument focuses on the wrong constitutional right.  A similar situation occurred in *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010).  In *Hill*, the plaintiff alleged that the defendants placed him in segregation and threatened to transfer him to a different prison in retaliation for him filing grievances.  *Id.* at 473.  The district court held that the plaintiff failed to state a constitutional claim because "prisoners do not 'have an inherent constitutional right to avoid a transfer from one prison to another, [or to] remain free of security classifications that would place them in segregation or specialized housing units[.]"  *Id.*  In reversing the district court, the Sixth Circuit stated: "Where the district court's analysis went astray . . . was in focusing on the wrong constitutional right; i.e., the nonexistent right to avoid segregated housing and prison transfers versus the existing right to avoid retaliation for exercising the First Amendment right to file grievances against prison officials."  *Id.*

Nonetheless, in the opinion of the undersigned, Defendant Perttu is entitled to judgment as a matter of law on this retaliation claim because the alleged conduct does not amount to an adverse action.  The adverseness inquiry is an objective one, and does not depend on how a

particular plaintiff reacted. *Thaddeus-X*, 175 F.3d at 396, 398. Thus, the question is whether Defendant Perttu's actions were more than *de minimis* and capable of deterring a person of ordinary firmness from exercising future First Amendment rights. *Id.* Several courts have determined that problems arising during the grievance process do not amount to an adverse action. *See Neal v. Ellis*, 2010 WL 5467485, at *5 (W.D. Mich. Dec. 30, 2010) ("[T]he failure to timely or accurately process a grievance does not amount to adverse action."); *Nolen v. Luoma*, 2008 WL 878920, at *9 (W.D. Mich. Feb. 11, 2008) ("Plaintiff's claim that Defendant Lesatz "lied" on grievance responses fails to constitute an adverse action for purposes of a retaliation claim."), *report and recommendation adopted as modified*, 2008 WL 878769 (W.D. Mich. Mar. 28, 2008).

Similarly, in *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003), the Sixth Circuit held that a single cell search does not amount to an adverse action. In that case, the plaintiff asserted First and Eighth Amendment claims based on the prison officials searching his cubicle, refusing to permit him to use the restroom, revoking his medical restriction, and restricting him to a segregation cell. *Id.* In addressing the cubicle search, the Sixth Circuit stated:

> Mr. Tate cannot establish a case for retaliation regarding the cubicle search for two reasons. First, the single search of a prison cubicle would not deter a person of "ordinary firmness" from pursuing constitutional grievances. *See Thaddeus-X*, 175 F.3d at 396. Second, as the district court noted, even if the cubicle search made out a prima facie case for retaliation or deterrence, Mr. Tate cannot show that the search was not a part of the standard monthly searches. In other words, Mr. Tate cannot establish that his cubicle would not have been searched if he had not filed the grievances. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86 (1977). Additionally, the single search of a prisoner's cubicle does not rise to the level of an Eighth Amendment violation. *But see Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991) (finding an Eight Amendment claim when there had been ten searches in nineteen days); *Vaughn v. Trotter*, 516 F. Supp. 886 (M.D. Tenn. 1980) (finding a claim when there had been sixteen searches in six months).

*Id.* Thus, a single cell search does not amount to an adverse action or an Eighth Amendment violation. Here, Defendant Perttu denies ordering any retaliatory cell searches. The prison officials state that they routinely perform random cell searches, but that Defendant Perttu never ordered them to shakedown Plaintiff's cell. Plaintiff disputes this fact; however, he has offered no evidence to establish when the shakedowns occurred, how many times they occurred, or how they differed in any way from routine shakedowns in the prison facility. Therefore, in the opinion of the undersigned, Defendant Perttu is entitled to judgment as a matter of law on this retaliation claim. For these same reasons, the undersigned finds that Defendant Perttu is entitled to judgment as a matter of law on the Eighth Amendment claim based on the cell shakedowns. See *Tate*, 85 F. App'x at 417 ("[T]he single search of a prisoner's cubicle does not rise to the level of an Eighth Amendment violation.").

Plaintiff next asserts a "supervisory liability" claim against Defendant Olson.[5] "Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984). Here, Defendant Olsen could not have "implicitly authorized, approved or knowingly acquiesced" in the unconstitutional conduct because, as discussed above, there were no constitutional violations. Therefore, in the opinion of the undersigned, Plaintiff's supervisory liability claim against Defendant Olsen should be dismissed.

---

[5] Plaintiff alleged that he had two conversations with Defendant Olson regarding the unconstitutional behavior of Defendants Hamel and Perttu. Defendant Olsen denies that these conversations ever happened.

Finally, the undersigned must address Plaintiff's pending state-law gross negligence claims. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, in the opinion of the undersigned, Plaintiff's state-law claims should be dismissed.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 31) be granted because Defendants are entitled to qualified immunity. It is further recommended that the Court not retain supplemental jurisdiction over Plaintiff's state-law claims and that this case be dismissed.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  September 26, 2017

                                          . /s/ Timothy P. Greeley                              .
                                          TIMOTHY P. GREELEY
                                          UNITED STATES MAGISTRATE JUDGE